IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLAUDIA RENATI, et al.,

        Plaintiffs,

    v.

WAL-MART STORES, INC.,

        Defendant.

Case No. 19-cv-02525-CRB

**ORDER GRANTING MOTION TO SEVER, DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS, AND DENYING AS MOOT MOTION TO STAY DISCOVERY**

This case is the latest iteration of a Title VII suit alleging that Wal-Mart Stores, Inc.'s ("Wal-Mart") promotion and pay policies discriminate against women. Originally brought in 2001 as a class action, these claims have now been heard by the Northern District of California (on two previous occasions), an en banc panel of the Ninth Circuit, and the Supreme Court. Eighteen members of the original nationwide class (collectively, "Plaintiffs") have now filed suit as individuals, alleging disparate treatment and impact. Wal-Mart has moved to sever, dismiss the Complaint in part, and stay discovery.

## I.    BACKGROUND

### A.    Procedural History

This case dates back to June 2001, when current and former female Wal-Mart employees brought suit on behalf of a nationwide class alleging widespread gender discrimination. Judge Jenkins certified a nationwide class, which the Ninth Circuit, sitting en banc, affirmed in large part. The Supreme Court reversed on June 20, 2011. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 347–48, 359–60 (2011).

Following the Supreme Court's decision, the Dukes Plaintiffs narrowed the scope of the

proposed classes to current and former female Wal-Mart employees who had been subjected to gender discrimination within four regions largely based in California. Dukes v. Wal-Mart Stores, Inc., 964 F. Supp. 2d 1115, 1117 (N.D. Cal. 2013). This Court denied certification, finding that the narrowed scope did not cure the problems that had foreclosed certification of the nationwide class. Id. at 1118.

This case followed. Plaintiffs are eighteen of the would-be class members from Dukes. Compl. ¶ 5 (dkt. 1). On May 10, 2019, they filed suit in their individual capacities, alleging pay and promotional discrimination on the basis of gender. See generally id. The case was initially before Judge Koh, but was transferred to this Court because it was related to Dukes. See Order Relating Cases (dkt. 32).

### B. Factual Allegations

Plaintiffs, like the class in Dukes, allege Wal-Mart has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., by discriminating against them on the basis of gender. Compl. ¶ 1. All eighteen plaintiffs are current or former female Wal-Mart employees who have worked in Wal-Mart Regions 5, 16, or 19.[1] Id. ¶¶ 11–28. They assert claims for pay and promotional discrimination in all three regions, based on both disparate treatment and disparate impact. Id. ¶¶ 313–91.

The first part of the Complaint alleges that generally applicable pay and promotional policies "adverse[ly] impacted[ed] female employees in all three regions." Id. ¶¶ 98, 119. Plaintiffs allege that various elements of Wal-Mart's pay policies had an adverse impact on women, "including . . . failure to require managers to base pay decisions for individual employees on job related criteria[,] . . . setting pay adjustments based on the associate's prior pay, . . . and [the] 2004 pay class restructuring." Id. ¶¶ 98. Plaintiffs also challenge a 2005 policy tying pay to

---

[1] Wal-Mart's operations are divided into thirty-five Wal-Mart Regions and five Sam's Club Regions. Compl. ¶ 32. Each of the three relevant regions is comprised of slightly more than 100 stores, mostly located in the American West. Id. ¶ 33.

"credits" awarded on the basis of past experience, and a 2006 policy implementing caps on the pay permitted for different classes of jobs. Id. ¶¶ 62–63. The Complaint alleges, in some detail, statistically significant differences in pay for men and women in Regions 16 and 19 in 2001 and 2002. Id. ¶ 75.

Plaintiffs also allege numerous promotional policies with an adverse impact on women, including the lack of formal application processes or job postings for certain management positions, and the failure to "require managers to base promotion decisions . . . on job related criteria." See, e.g., id. ¶¶ 100, 101, 119. Plaintiffs allege that in each relevant Region Wal-Mart promoted men and women at significantly different rates, and "had a lower percentage of female managers than its largest competitors." Id. ¶¶ 107–09.

The second part of the complaint details allegations of discriminatory treatment unique to each plaintiff. These allegations describe specific incidents when plaintiffs were passed over for promotions that went to less qualified men or learned that similarly-situated male employees made more than they did. See generally id. ¶¶ 132–312. In some cases Plaintiffs were explicitly told that this discriminatory treatment was motivated by gender. See, e.g., id. ¶¶ 197 (when plaintiff Mavi Alulquoy inquired about promotional opportunities, managers told her women should "have babies instead of lifting crates"), 271 (when Darla Harper complained about a pay disparity, her manager told her "this is why you can't be in management" and that "you females are too emotional").

All Plaintiffs allege they "have exhausted their administrative remedies and complied with the statutory prerequisites of Title VII by timely filing charges of discrimination." Id. ¶ 7.

Wal-Mart has moved to sever Plaintiffs' claims, Mot. to Sever (dkt. 17), dismiss the Complaint in part, MTD (dkt. 19), and for a stay of discovery pending resolution of the motion to dismiss, Mot. for Stay (dkt 18).

## II.    LEGAL STANDARDS

### A.    Motion to Sever

"[J]oinder is proper if (1) the plaintiffs asserted a right to relief arising out of the same

3

transaction and occurrence <u>and</u> (2) some question of law or fact common to all the plaintiffs will arise in the action." <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th Cir. 2000) (emphasis in original); <u>see also</u> Fed. R. Civ. P. 20(a)(1).  The requirements for joinder are "construed liberally in order to promote trial convenience and . . . prevent[] multiple lawsuits." <u>League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency</u>, 558 F.2d 914, 917 (9th Cir. 1977).  Even if Rule 20's requirements are satisfied, courts must also consider whether joinder "would comport with fundamental principles of fairness or would result in prejudice to either side." <u>Coleman</u>, 232 F.3d at 1296 (internal quotation marks omitted).  If plaintiffs have been misjoined, their claims may be severed "as long as no substantial right will be prejudiced." <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1351 (9th Cir. 1997); <u>see</u> Fed. R. Civ. P. 21.

## B.    Motion to Dismiss in Part

A complaint that fails to state a claim upon which relief may be granted must be dismissed under Federal Rule of Civil Procedure 12(b)(6).  A complaint fails to state a claim when it asserts no cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011).  In deciding the motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).

"A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A complaint must "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  In determining whether this standard is met, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated

4

into the complaint by reference, and matters of which a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court nevertheless has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir. 2008) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

## C.    Motion to Stay Discovery

Federal Rule of Civil Procedure 26(c) allows courts to stay discovery "for good cause." The Court has "wide discretion in controlling discovery." <u>Little v. City of Seattle</u>, 863 F.2d 681, 685 (9th Cir. 2008).

## III.    DISCUSSION

### A.    Motion to Sever

Severance is appropriate because Plaintiffs' claims do not arise out of the same transaction or occurrence. Plaintiffs argue that the doctrine of judicial estoppel bars Wal-Mart from requesting severance, <u>see</u> Mot. to Sever Opp'n at 10–11 (dkt. 38), but this argument misreads Wal-Mart's earlier representations. Plaintiffs also argue that, "[a]t a minimum," this Court should postpone deciding Wal-Mart's motion until after the parties complete discovery. <u>Id.</u> at 6, 16–17. But the Court is not obligated to postpone deciding Wal-Mart's motion, and the parties can avoid duplicative discovery even after severance.

#### 1.    Judicial Estoppel

Plaintiffs argue that Wal-Mart is judicially estopped from moving to sever their claims, because its motion to transfer this case to this Court acknowledged that Plaintiffs' claims arose from a common occurrence and share common questions of law and fact. Opp'n to Severance at

10–11.  But Wal-Mart is correct that its motion to transfer made no such representations.  Mot. to Sever Reply at 1 (dkt. 44).

The doctrine of judicial estoppel precludes a party from asserting a claim and "later seeking an advantage by taking a clearly inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  The doctrine "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)).  Although courts do not use a single test to decide whether the doctrine applies, relevant considerations include whether a party's positions are "clearly inconsistent" with one another, whether a court has accepted a party's initial position, and whether the party would "derive an unfair advantage . . . if not estopped."  Id. at 750–51 (internal quotation marks omitted).

Judicial estoppel is inapplicable here.  Wal-Mart's motion to transfer this case is not "clearly inconsistent" with its present motion to sever Plaintiffs' claims.  See Mot. to Transfer at 4–7 (dkt. 16); Mot. to Sever at 8–12.  Wal-Mart sought to transfer this case because it "is related to the previously-filed Dukes class action," which this Court presided over.  Mot. to Transfer at 4.  Wal-Mart argued that transferring the case would prevent unnecessary labor and expense because this Court "is intimately familiar with the factual allegations made in Plaintiffs' complaint, many of Defendant's defenses, as well as procedural rulings that will impact the resolution of this case."  Id.  Although Wal-Mart argued in its motion to transfer that Plaintiffs' claims were related to the Dukes class action, Wal-Mart did not argue that Plaintiffs' claims were related to each other.  See id. at 4–7; Mot. to Sever Reply at 1–2.

## 2. Wal-Mart's Motion to Sever Plaintiffs' Claims

### a. Same Transaction and Occurrence

Wal-Mart argues that Plaintiffs' claims did not arise out of the same transaction or occurrence.  Mot. to Sever at 12.  Rather, Wal-Mart says, Plaintiffs' claims "are based on compensation and promotional decisions made by different supervisors, during different time periods, in different locations, for different jobs."  Id.  According to Wal-Mart, the only

6

1    connection among Plaintiffs' claims is that they allege sex-based discrimination.  Id. at 1.

2    Plaintiffs contend that their discrimination claims stem from Wal-Mart's widely-held policy of

3    gender discrimination—i.e., that managers "were permitted to arbitrarily set workers'

4    compensation, without any required documentation for their decisions or any accountability from

5    their supervisors. . . ."  Mot. to Sever Opp'n at 13.  Plaintiffs argue that because they were each

6    injured by the same "pattern or practice of . . . discriminatory conduct," their claims satisfy

7    Rule 20's "same transaction" requirement.  Id. at 14.

8         Rule 20's "same transaction" provision "requires factual similarity in the allegations

9    supporting [p]laintiffs' claims."  Visendi v. Bank of Am., N.A., 733 F.3d 863, 870 (9th Cir. 2013).

10   Several analogous cases from the Eastern District of California suggest how this standard should

11   be employed in employment discrimination cases.  See Robinson v. Geithner, No. 05-cv-01258,

12   2011 WL 66158 (E.D. Cal. Jan. 10, 2011); Walker v. Bryson, No. 11-cv-01195, 2012 WL

13   5186658 (E.D. Cal. Oct. 16, 2012).  In Robinson, the court held that the plaintiffs' claims were

14   factually distinct and therefore did not arise out of the same transaction or occurrence.  Robinson,

15   2011 WL 66158, at *6–8.  Three African-American plaintiffs who worked for the Internal

16   Revenue Service during different but overlapping periods alleged that their employer

17   discriminated against them based on race.  Id. at *1–4.  The plaintiffs suffered a variety of

18   discriminatory conduct, but each plaintiff's experience was different, and each involved different

19   supervisors.  See id.  For example, one plaintiff was promoted but offered a lower pay grade than

20   similarly situated non-African-American employees; another plaintiff was removed from his

21   management position and denied overtime; and the third plaintiff was harassed with racial slurs

22   and menial tasks.  Id. at *2–4.  The court noted that the plaintiffs' claims "involve[d] different

23   supervisors . . . different job positions in different departments, and . . . different discriminatory

24   conduct that occurred at different time periods."  Id. at *7. Further, the court found that the

25   plaintiffs did not trace the discriminatory conduct to an agency-wide policy.  Id. at *8.  The court

26   therefore held that the plaintiffs' claims did not arise from the same transaction or occurrence.  Id.

27        In Walker, conversely, the court held that three plaintiffs who alleged that the Census

28   Bureau discriminated against them in violation of Title VII were properly joined.  Walker, 2012

7

WL 5186658, at *1, *5.  Although the court noted that the plaintiffs' claims included factual differences, including that the plaintiffs worked in different positions, the claims implicated a common group of supervisors.  Id. at *6–7.  Moreover, the court explained that the plaintiffs not only "shared at least two supervisors," but that "they all worked in the same office. . . ."  Id. at *7.  And the plaintiffs alleged that they suffered discrimination during the same approximately two-year time period.  Id.  The court held that these similarities established that the plaintiffs' claims arose from the same transaction or occurrence.  Id.

This case is more like Robinson than Walker.  As in Robinson, each of the Plaintiffs worked at a different location, under different supervisors, and during different time periods.  Compl. ¶¶ 132–312.  Proving each plaintiff's claim of employment discrimination—which requires showing that each plaintiff was herself injured by Wal-Mart's discriminatory policies or practices—will therefore require substantial evidence unique to each plaintiff, suggesting that joinder is inappropriate.  See Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (Title VII plaintiff must show "adverse employment action").

It is true, as Plaintiffs point out, that their claims rely in part on allegations of generally applicable practices and policies.  See Compl. ¶¶ 53–131.  However, the logic of Corley v. Google, Inc., 316 F.R.D. 277 (N.D. Cal. 2016), demonstrates why allegations of generally applicable policies are not necessarily sufficient to support joinder.  In Corley, Judge Koh held that more than 800 plaintiffs who alleged that Google unlawfully intercepted their emails failed to satisfy the "same transaction" requirement of Rule 20.  Id. at 279, 282–83.  The plaintiffs used Google's email services for educational institutions and alleged that Google intercepted and scanned their incoming and outgoing emails.  Id. at 279.  The court explained that a principal question regarding each plaintiff's claim was whether the plaintiff consented to Google's email policies when the plaintiff created her or his email account.  Id. at 279–81.  Google required educational institutions that offered its email services to obtain authorization from users.  Id. at 280.  But Google "had a separate contract with each educational institution," and, as a result, the processes for disclosing Google's email policies to users and obtaining users' authorization differed among institutions.  Id.  The court noted that it had previously denied class certification

based on similar claims because determining whether class members had consented to Google's email policies would be "litigated on an individual, rather than classwide basis." Id. (internal quotation marks omitted). Judge Koh noted that similarly, in the context of joinder, "the single transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis." Id. at 284. Because the plaintiffs' educational institutions used different processes for obtaining users' authorization and disclosing Google's email policies, determining whether the plaintiffs consented to Google's email policies would require individualized "fact-specific" inquiries. Id. at 285. The individualized inquiry needed to determine whether each plaintiff had consented to Google's email policies meant that the plaintiffs' claims did not arise from the same transaction or occurrence. Id. at 285, 287.

Corley's logic is persuasive and on-point in this case. As in Corley, where the court had previously denied class certification in a case involving similar claims, this Court previously declined to certify a class of plaintiffs who alleged that Wal-Mart's system for setting employees' pay and promoting employees discriminated against women. See Corley, 316 F.R.D. at 280–81, 285; Dukes, 964 F. Supp. 2d at 1118. And, as in Corley, the individualized proof that militated against class certification also precludes joinder. Like the plaintiffs in Corley, Plaintiffs allege certain generally applicable policies and practices caused or contributed to their injuries. But, as in Corley, to prevail each plaintiff will need to produce individualized proof of a crucial element of her claim—in this case, evidence that she herself was harmed by Wal-Mart's discriminatory policies. As a result, Wal-Mart "would need to undertake a highly individualized analysis" to defend against each Plaintiff's claims. See Corley, 316 F.R.D. at 286. Because each plaintiff's claim requires an individualized inquiry, they do not arise from the same transaction or occurrence, despite the overlap in their factual allegations.

Because the parties would have to litigate Plaintiffs' claims on an individualized basis, Wal-Mart's motion to sever is granted. Because Plaintiffs have not satisfied the "same transaction" requirement of Rule 20, the Court need not decide whether Plaintiffs' claims share a common question of law or fact, or whether joinder would prejudice Wal-Mart. See Coleman, 232

9

F.3d at 1296 (9th Cir. 2000) (joinder requires a finding that claims arise out of the same transaction or occurrence <u>and</u> share a common question of law or fact); Fed. R. Civ. P. 20(a)(1). It is also unnecessary to consider Wal-Mart's alternative request that the Court try Plaintiffs' claims separately under Federal Rule of Civil Procedure 42(b).

### a.    Substantial Rights Affected by Severance

When parties are misjoined, a court "may at any time, on just terms, add or drop a party," or "sever any claim." Fed. R. Civ. P. 21. "[A] court, in its discretion, may sever [ ] misjoined parties, so long as no substantial right will be prejudiced by the severance." <u>Coughlin</u>, 130 F.3d at 1350 (quoting the district court). Plaintiffs argue that severing their claims would be unfairly prejudicial, because "a multiplicity of trials necessarily incurs greater expense and time . . . especially considering the duplicative testimony that would [ ] need to be presented at potentially 18 separate trials." <u>See</u> Mot. to Sever Opp'n at 11, 19.

<u>Smith v. Cty. of Santa Clara</u>, No. 11-cv-05643 EJD, 2013 WL 3242346 (N.D. Cal. June 25, 2013), considered a similar argument that severance would be unfairly prejudicial in an employment discrimination case. <u>Id.</u> at *6. Judge Davila found that severance would not be prejudicial because the severed plaintiff's claims were "based on one incident" and establishing "[a] pattern or practice of discrimination . . . [was] not critical to her case." <u>Id.</u> This logic applies here. Although establishing a pattern and practice of discrimination at Wal-Mart would be helpful to Plaintiffs' claims, it is not sufficient for each individual Plaintiff to prevail. The individualized proof necessary to each plaintiff's case outweighs the possible prejudice that would result from Plaintiffs having to present duplicative proof at multiple trials.

Plaintiffs also argue that joinder promotes efficient discovery. <u>See</u> Mot. to Sever Opp'n at 16–17. But these efficiencies can be preserved even after severance. To the extent Plaintiffs' claims rely on common factual allegations, discovery can "be coordinated to reduce or eliminate unnecessarily repetitive discovery, such as one deposition of a supervisor common to all . . . Plaintiffs." <u>Walker v. Bryson</u>, No. 1:11-cv-01195-AWI-SKO, 2012 WL 5186658, at *9 (E.D. Cal. 2012).

### 3. Plaintiffs' Request to Postpone Ruling on the Motion to Sever

Plaintiffs argue that Wal-Mart's motion to sever is "wholly premature," and that even if the Court does not deny the motion, the Court should allow the Plaintiffs to remain joined for discovery and postpone ruling on the motion to sever until a "later, and more appropriate, time." Mot. to Sever Opp'n at 6. Wal-Mart responds that severing Plaintiffs' claims will "greatly reduc[e] the potential for time-consuming discovery disputes," because the parties "will focus discovery on each Plaintiff's . . . specific claims. . . ." Mot. to Sever Reply at 3.

Plaintiffs' request to postpone deciding Wal-Mart's motion to sever is denied. No additional factual development is necessary to determine that the parties will need to litigate Plaintiffs' claims on an individualized basis, which is sufficient to establish that they are not properly joined under Rule 20.

### B. Motion for Partial Dismissal

Wal-Mart moves to dismiss various claims of some or all Plaintiffs, on a variety of grounds. This section proceeds in four parts. First, it addresses Wal-Mart's argument that certain plaintiffs have failed to state claims for either pay or promotional discrimination. Second, it discusses Wal-Mart's numerous arguments that some or all of Plaintiffs' disparate impact claims should be dismissed. Third, it addresses the argument that certain claims have not been administratively exhausted. Fourth, it discusses whether Plaintiffs' claims are time-barred to the extent they rely on factual allegations not present in the <u>Dukes</u> complaint.

### 1. Failure to State a Claim

#### a. For Pay Discrimination

Wal-Mart argues that plaintiffs Claudia Renati, Denise Van Galder, Alulquoy, Rita Weisz, Gina Portillo Vierra, and Shannon Stephenson have failed to state claims for pay discrimination. MTD at 4–5. The only allegation that each of these plaintiffs personally suffered pay discrimination is a formulaic recitation of the cause of action: "Upon information and belief, [plaintiff] believes she [is and] was paid less than other similarly situated men during her employment." <u>See</u> Compl. ¶¶ 155, 190, 200, 211, 230, 245. Such conclusory allegations, "devoid

of further factual enhancement," are insufficient to state a claim for relief plausible on its face. Iqbal, 556 U.S. at 677–78.

Plaintiffs cannot salvage these claims by pointing to their more general allegations of a "pattern or practice" of discrimination. MTD Opp'n at 10–12 (dkt. 40). It is true that evidence of a pattern or practice of discrimination may, in a class action, be sufficient to prove a Title VII claim, "even absent proof of losses to specific individuals." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 147 (2d Cir. 2012). But every circuit to consider the question[2] has held that individual Title VII plaintiffs cannot prevail based only on pattern or practice evidence. Id. at 149–50 (collecting cases). These courts reason that extending the pattern-or-practice method of proof to individual cases would impermissibly "relieve the plaintiff of the need to establish each element of his or her claim." Id. at 149. The Court agrees with previous Northern District of California decisions finding this reasoning persuasive. Buchanan, 2018 WL 3537083, at *4. Individual plaintiffs must show that they themselves were discriminated against. See Hawn, 615 F.3d at 1156. Evidence of pattern or practice of discrimination may be helpful in making that showing, see Diaz v. Am. Tel. & Tel., 752 F.2d 1356, 1362–63 (9th Cir. 1985), but it cannot substitute for allegations that an individual plaintiff was personally harmed by discriminatory treatment.

Plaintiffs cite cases in which statistical evidence, combined with anecdotal evidence of discrimination, sufficed to show a prima facie case of discrimination. MTD Opp'n at 12 (citing Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531 (9th Cir. 1982)). But these cases do not stand for the proposition that individual plaintiffs can use statistical evidence to avoid alleging that they themselves suffered discriminatory treatment. Renati, Van Galder, Alulquoy, Weisz, Vierra, and Stephenson's claims for pay discrimination are dismissed with leave to amend. To salvage these claims, Plaintiffs must add non-conclusory allegations that these individuals were subject to pay discrimination.

---

[2] The Ninth Circuit has not addressed this issue. Buchanan v. Tata Consultancy Servs., Ltd., No. 15-CV-01696-YGR, 2018 WL 3537083, at *4 (N.D. Cal. July 23, 2018).

### b. Promotional Discrimination

Wal-Mart is incorrect that plaintiff Hope Garcia fails to state a claim for promotional discrimination.  See MTD at 5–6.  Wal-Mart ignores Plaintiffs' allegation that Garcia "sought advancement opportunities at Wal-Mart by applying to the Warehouse where she could work in shipping and receiving, but the male Lead managers [sic], Tom, told her that it was a 'guy's job.'"  Compl. ¶ 278.  Garcia's allegation that she was explicitly denied an advancement opportunity based on her gender is sufficient "factual enhancement" supporting promotional discrimination claims.  Wal-Mart's motion to dismiss those claims is denied.

### 2. Disparate Impact Claims

Wal-Mart makes several arguments that some or all of the Plaintiffs' disparate impact claims should be dismissed.  It argues that some or all Plaintiffs lack standing to assert and have failed to state disparate impact claims, and that plaintiff Sharon Reese failed to exhaust her disparate impact claim.  MTD at 8–20.  Analysis of these issues depends on the answer to a threshold question: Whether Plaintiffs have adequately plead that the challenged policies and practices are incapable of being separated out for analysis, and therefore must be analyzed as a single process.  Id. at 17–18.  This Order analyzes this issue first, then addresses standing and the sufficiency of the disparate impact allegations.  Reese's ostensible failure to exhaust is addressed in the following section on administrative exhaustion.

### a. Wal-Mart's Policies are Incapable of Separate Analysis

Ordinarily, "to establish a prima facie case of disparate impact, the plaintiff must: (1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation."  Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990).  However, "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice."  42 U.S.C. § 2000e-2(k)(1)(B)(i).  Whether this standard is met is a question of fact.  McClain v. Lufkin Indus., Inc., 519 F.3d 264, 276 (5th Cir. 2008).

The Complaint sufficiently alleges that the elements of Wal-Mart's promotional and pay decisionmaking processes, respectively, cannot be analyzed separately. The Court will therefore analyze each process as a single employment practice, at least at the pleading stage. Courts in the Northern District of California have found that the elements of a "subjective and ambiguous" decisionmaking process were incapable of separate analysis. See, e.g., Stender v. Lucky Stores, Inc., 803 F. Supp. 259, 335 (N.D. Cal. 1992). The Court finds this reasoning persuasive. Policies marked by excessive discretion or subjectivity are by definition difficult to define and variable in their impact, and therefore difficult to analyze separately. The Complaint alleges that Wal-Mart's pay and promotion decisions were not based on "job related criteria," and that excess discretion and subjectivity allowed discrimination against women. See, e.g., Compl. ¶¶ 57, 60, 72, 74, 98, 102–03, 106, 119. Taking the well-pleaded allegations in the Complaint as true, it is reasonable to infer that the elements comprising Wal-Mart's pay and promotion decisionmaking processes at any given time cannot be separated out for analysis.

It is true, as Wal-Mart points out, that some of the elements of Wal-Mart's pay policies identified in the Complaint, such as pay caps and new hire credits, are more objective. MTD at 17–18. But "[s]election systems that combine both subjective and objective criteria are generally considered subjective in nature." Rose, 902 F.2d at 1424. It is therefore appropriate to treat Wal-Mart's pay and promotion decisionmaking processes as subjective in nature, even if they involve some objective elements.

Wal-Mart also argues that the elements of its pay practices must be capable of separate analysis because certain elements applied only to certain job classes, or only during certain years. MTD at 17–18. As explained below, the Court agrees that any given plaintiff should only be able to challenge the pay or promotional process as it existed during the period of her employment. That is to say that plaintiffs cannot prove their discrimination claims by relying on elements of the pay and promotion practices that did not apply to them. See Borja-Valdes v. City & Cty. of San Francisco, No. 3:14-CV-04168-CRB, 2015 WL 5522287, at *6–7 (N.D. Cal. Sept. 18, 2015) (plaintiff lacked standing to challenge policy that could not have applied to her). But this does not mean these elements of Wal-Mart's processes are capable of separate analysis. The Complaint

alleges that Wal-Mart's pay and promotion decisionmaking processes involved significant discretion and subjectivity at all times and as applied to all job classes. Compl. ¶¶ 98, 119. That suggests these elements of the decisionmaking process are still inseparable from Wal-Mart's decisionmaking process as a whole (at least as it existed at the time that element was in effect). Perhaps comparing the impact of those processes before and after a given element went into effect could facilitate separate analysis, but that possibility is a question of fact not appropriate for resolution at this stage.

Finally, Wal-Mart cites a number of recent Southern District of Florida decisions holding, on very similar facts, that plaintiffs alleging disparate impact claims against Wal-Mart failed to show the policies they challenged were incapable of separate analysis. <u>See</u> Statement of Recent Decision Ex. A (dkt. 53). These decisions are unpersuasive, because they fail to recognize the significance of the subjective and discretionary elements of the processes Plaintiffs are challenging. Instead, they focus on the plaintiffs' failure to "do more than just complain about Walmart's recordkeeping practices." <u>See, e.g.</u>, <u>id.</u> at 11–12. Here, Plaintiffs have done more, by identifying systems that are "pervaded by a lack of uniform criteria" and thus incapable of separation.[3] <u>Stender</u>, 803 F. Supp. at 335.

### a.      Standing to Bring a Disparate Impact Claim

To have standing, a plaintiff must show she has "suffered an 'injury in fact' that is . . . fairly traceable to the challenged action of the defendant." <u>Gest v. Bradbury</u>, 443 F.3d 1177, 1181–82 (9th Cir. 2006). Wal-Mart argues that all Plaintiffs lack standing to bring a disparate impact claim, because "most identify no particular promotional policy and none deigns to say whether or how any pay policy harmed her." MTD at 11. According to Wal-Mart, Plaintiffs have therefore failed to plead that they were injured by the policies they challenge. <u>Id.</u> at 9. However, Plaintiffs have adequately alleged that Wal-Mart's pay and promotional processes are incapable of separate analysis. Plaintiffs can challenge the overall pay and promotion decisionmaking

---

[3]  Because the Southern District of Florida decisions found that the plaintiffs failed to allege policies and practices incapable of separate analysis, the rest of their disparate impact analysis is distinguishable.

1    processes in effect during their employment, and establish standing by tracing their harm to the

2    processes considered as a whole.  Plaintiffs' failure to identify "the specific employment practices

3    or selection criteria being challenged" is not dispositive.  See 42 U.S.C. § 2000e-2(k)(1)(B)(i).

4         Wal-Mart's alternative argument, that individual Plaintiffs lack standing to challenge

5    certain elements of the policies that could not have injured them, is better taken.  Renati, Van

6    Galder, Alulquoy, Weisz, Vierra, and Stephenson fail to sufficiently allege that they were harmed

7    by any pay policy.  Their disparate impact claims related to pay also fail, because they lack

8    standing to challenge policies that did not cause their injury.  See Schmier v. U.S. Court of

9    Appeals for the Ninth Circuit, 279 F.3d 817, 820–21 (9th Cir. 2002).

10        Wal-Mart also argues that Plaintiffs lack standing to challenge elements of the pay and

11   promotion processes that could not have applied to them, because they either were only in effect

12   before or after a given plaintiff's employment, or applied only to positions that plaintiff never

13   held.  Plaintiffs appear to acknowledge, as they must, that each plaintiff cannot challenge policies

14   that did not apply to her.  See MTD Opp'n at 15 ("Of course, Plaintiffs are limited by the terms of

15   their employment or their positions."); see also Borja-Valdes, 2015 WL 5522287, at *6–7.

16        But it is not necessary to determine which policies applied to which plaintiffs at this point

17   in the litigation.  Because Plaintiffs have adequately plead that the elements of Wal-Mart's pay

18   and promotion processes were inseparable, each plaintiff has adequately plead a disparate impact

19   claim based on the overall pay and promotional decisionmaking process that applied to her.[4]  This

20   is sufficient to deny the motion to dismiss the disparate impact claims for lack of standing.

### a.    Failure to State a Disparate Impact Claim

22        Wal-Mart also argues that Plaintiffs fail to state a disparate impact claim because they have

23   failed to plead facts showing "a significant discriminatory impact."  MTD at 12–17.  To plead a

24   disparate impact claim, plaintiffs must "prove causation," by "offer[ing] statistical evidence of a

25   kind and degree sufficient to show that the practice in question has caused the exclusion of

---

[4]  Except for Renati, Van Galder, Alulquoy, Weisz, Vierra, and Stephenson, who lack standing to pursue disparate impact claims related to pay.

applicants for jobs or promotions because of their membership in a protected group." Rose, 902 F.2d at 1424. This requires "statistical disparities . . . sufficiently substantial that they raise . . . an inference of causation." Id.

Plaintiffs have alleged sufficient facts to meet this standard for the disparate impact claims related to pay. The Complaint contains detailed allegations of statistically significant pay differences between male and female employees at Wal-Mart. Compl. ¶ 75. True, these statistics do not cover the entire period of Plaintiffs' collective employment. Id. But because the Plaintiffs argue that Wal-Mart's pay processes were marked by excess discretion and subjectivity throughout the relevant period, it would be reasonable to infer that these statistics are representative of the impact of similar processes at later dates. And some of the later policies, such as merit-based pay raises for Assistant Managers, were based on employees' prior pay rates. Id. ¶ 65. The older statistics are therefore directly relevant to allegations that later policies perpetuated existing disparities in pay. Id.

Accepting the Complaint's statistics as adequate evidence of a significant discriminatory impact on female employees' pay accords with previous Northern District of California decisions, which are fairly generous in accepting statistical allegations at the pleading stage. For example, Lee v. Hertz Corp., 330 F.R.D. 557 (N.D. Cal. 2019), found that the plaintiffs had adequately plead that a criminal background check policy that disqualified any candidate with a conviction or a pending prosecution had a disparate impact on Latinos. Id. Judge Seeborg's decision relied on statistical allegations that "Latinos were arrested and convicted of crimes at more than double the rates of whites." Id. From this, it could be inferred that the screening policy would have a disparate impact on Latinos' chance of being hired. Id. Judge Seeborg held that "[m]ore is not required from Plaintiffs at the pleading stage." Id. This makes sense, since the data necessary to show robust statistical disparities is probably inaccessible to the plaintiffs before discovery.

If this indirectly relevant statistical evidence could support a finding of causation in Lee, the same is true of the statistical allegations in this case. Wal-Mart points out that this Court has previously rejected the significance of the same statistics. However, the decision Wal-Mart cites denied class certification. Dukes, 964 F. Supp. 2d at 1119–21. This Court held that at the class

17

certification stage, the statistical evidence was insufficient to satisfy Federal Rule of Civil Procedure 23's commonality requirement. Id. In contrast, on a motion to dismiss, the statistical evidence must be "taken in the light most favorable to [Plaintiffs]" and all reasonable inferences drawn in their favor. Hernandez v. Sutter W. Capital, No. C 09-03658 CRB, 2010 WL 3385046, at *4 (N.D. Cal. Aug. 26, 2010).

Wal-Mart also argues that Plaintiffs have failed to adequately explain why various aspects of the challenged policies would disadvantage women. MTD at 14–17. These arguments fail because Wal-Mart's processes are properly evaluated as a whole. Assessed as a whole, Wal-Mart's pay and promotional processes are objectionable largely because they give managers excess discretion, allowing discriminatory decisions. See Compl. ¶¶ 98, 119. The Supreme Court and Ninth Circuit have recognized that such policies may give rise to disparate impact claims. Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 988–90 (1988); Rose, 902 F.2d at 1424.

On the other hand, Plaintiffs have failed to plead sufficient facts to establish a significant disparate impact on promotion. The Complaint's only statistical allegations regarding promotions state that "Wal-Mart has had a significantly lower percentage of female managers than its largest competitors," and that "[f]emale employees in each Region, and in each district within each region, have been much less likely than their male counterparts to receive promotion to management track positions," and "must wait significantly longer to be promoted into management track positions." Compl. ¶¶ 107–09. These threadbare allegations are so conclusory they need not be taken as true. Without them, Plaintiffs are left only with their assertions that the promotional policies would have a discriminatory impact, and individual plaintiffs' allegations that they experienced discrimination. The Ninth Circuit has suggested that this is insufficient to state a disparate impact claim. Statistical allegations are required. Rose, 902 F.2d at 1424. The disparate impact claims related to promotions are dismissed, with leave to amend. To preserve these claims, Plaintiffs should add more detailed allegations about the ostensible statistical evidence of promotional disparities.

### 3.     Failure to Exhaust

In order to establish subject matter jurisdiction over a Title VII claim, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC. Freeman v. Oakland Unified School Dist., 291 F.3d 632, 636 (9th Cir. 2002). If a later complaint "seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." Id. (internal quotation marks omitted). A claim is like or reasonably related to the allegations in the EEOC charge when the allegations of discrimination either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. (internal quotation marks omitted).

In determining whether this standard is met, courts consider "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002). The EEOC charge should be construed "with utmost liberality." Sosa v. Hiraoka, 920 F.2d 1451, 1458 (9th Cir. 1990).

Wal-Mart argues that Sharon Reese failed to exhaust her disparate impact claims, MTD at 18–20, that Jennifer Seely failed to exhaust her promotional discrimination claims, id. at 6–8, and that all Plaintiffs have failed to exhaust claims arising from the 2005 new hire credits and 2006 pay cap, id. at 22–23. Each of these arguments is addressed in turn.

### a.     Reese's Disparate Impact Claim

Wal-Mart is correct that Reese's charge makes no reference to a neutral policy with a disparate impact—the closest it comes is stating that Reese believes "female employees were paid less than male employees" and "male employees were given more promotional opportunities than female employees." Compl. Ex. A at 33 (dkt. 9-1). For their part, Plaintiffs do not seriously argue that Wal-Mart mischaracterizes Reese's EEOC charge. MTD Opp'n at 13.

Instead, Plaintiffs appear to argue either that Reese's disparate impact claim could

"reasonably be expected to grow out of" her EEOC charge, or that she can "piggyback" on other plaintiffs' charges. MTD Opp'n at 13–14. As to the first argument, "federal courts in general have concluded that an administrative charge that only alleges a discrimination claim based on disparate treatment is insufficient to exhaust a claim for disparate impact." De Los Santos v. Panda Exp., Inc., No. C 10-01370 SBA, 2010 WL 4971761, at *4 (N.D. Cal. Dec. 3, 2010). This result is persuasive—claims for disparate treatment and disparate impact have different elements and depend on different types of evidence, so it is unlikely that an investigation of one type of claim would encompass evidence of the other.[5] Id.; see also Watson, 487 U.S. at 985–87.

Although the piggybacking (or "single-filing") rule is a more plausible avenue to salvage Reese's disparate impact claims, it is likely inapplicable. "[S]o long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may 'piggyback' on that complaint, thereby satisfying the exhaustion requirement." Harris, 682 F.3d at 1136. It is generally, though not universally, agreed that the rule applies not only to class actions, but also to plaintiffs with joined claims. Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1198 (10th Cir. 2004) (collecting cases and noting that "only the Third Circuit confines the doctrine to class actions").

But the piggybacking rule is inapplicable, because a plaintiff who has failed to exhaust a claim in her EEOC charge cannot rely on another plaintiff's charge from an entirely separate individual action. Inda v. United Air Lines, Inc., 565 F.2d 554, 559 (9th Cir. 1977). Because the Court is granting Wal-Mart's motion to sever, Reese's suit is now entirely separate from the other plaintiffs, and she cannot piggyback on their EEOC charges. Reese's employment ended more than 300 days ago, Compl. ¶ 21, so it is too late for her to amend her charge. Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1846 (2019). Since this means Reese cannot salvage her disparate impact claims, they are dismissed with prejudice.

---

[5] Plaintiffs seem to suggest that because all the EEOC charges were assigned to the same investigator, her investigation would have encompassed disparate impact claims that other plaintiffs included in their charges. MTD Opp'n at 13. Plaintiffs cite no authority for the proposition that courts should consider other charges before the same investigator when determining the likely scope of the EEOC's investigation. The piggybacking rule, discussed below, allows plaintiffs to rely on other plaintiffs' charges in some circumstances. Harris v. County of Orange, 682 F.3d 1126, 1136 (9th Cir. 2012). But if anything, Plaintiffs' proposed approach would be either redundant of the piggybacking rule, or a way to circumvent its limits.

### a. Seely's Promotional Discrimination Claims

Wal-Mart argues that Seely's EEOC charge is "expressly limited to claims of pay discrimination," and therefore cannot exhaust claims of promotional discrimination.[6] MTD at 7. Wal-Mart accurately characterizes Seely's EEOC charge. See Compl. Ex. A at 42–43. It is also correct that evidence of promotional discrimination would not have been within the scope of the EEOC's investigation of Seely's charge. MTD at 7–8. Contrary to Plaintiffs' reading of Wal-Mart's case law, see MTD Opp'n at 20–23, courts that have considered this issue have held that a claim for pay discrimination does not exhaust claims for promotional discrimination. See Wright v. Kent Cty. Dep't of Soc. Servs., No. ELH-12-3593, 2014 WL 301026, at *12 (D. Md. Jan. 24, 2014) (collecting cases). This result makes sense. Promotional and pay discrimination claims rely on different theories of wrongdoing and require separate evidence. A claim for promotional discrimination is therefore not "consistent with the plaintiff's original theory of the case" when the original theory was pay discrimination. B.K.B., 276 F.3d at 1100.

Plaintiffs are incorrect in arguing that Wal-Mart fails to meet its burden of proof for this affirmative defense. MTD Opp'n at 20, 23. Seely's EEOC charge is properly subject to judicial notice, and sufficient to conclude that this claim is not exhausted. Dornell v. City of San Mateo, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013) (EEOC charge is properly subject to judicial notice because it is a "public record[ ] whose accuracy is not in dispute").

Plaintiffs do not argue that Seely's promotional discrimination claim can be saved by the piggybacking rule. In any event, that rule is inapplicable because the Court is granting Wal-Mart's motion to sever. Seely's promotional discrimination claims are dismissed for failure to exhaust. Because her employment ended more than 300 days ago, Compl. ¶ 292, amendment would be futile and dismissal is with prejudice.

---

[6] The motion to dismiss argues that plaintiff Cheryl Stout similarly failed to exhaust her promotional discrimination claims. MTD at 6–7. Wal-Mart's reply abandons this argument. MTD Reply at 2 n.1 ("Walmart does not contest that Stout exhausted a claim of promotional discrimination.").

### b. All Claims Based on the 2005 and 2006 Policies

According to Wal-Mart, none of the Plaintiffs' EEOC charges refer to any policy or practice implemented after June 2004. Wal-Mart argues that Plaintiffs have therefore failed to exhaust any claim based on policies arising after that time, including the 2005 new hire credits and the 2006 pay cap. Plaintiffs do not contend that their EEOC charges addressed these elements of Wal-Mart's pay processes. Instead, they argue that these claims were exhausted by general references to Wal-Mart's compensation system. MTD Opp'n at 26–29.

The Court finds that claims based on elements of Wal-Mart's pay policies introduced in 2005 and 2006 were exhausted by the charges' references to earlier pay discrimination. Courts have found that new acts of discrimination, committed after an EEOC charge was filed, are "like or reasonably related" to the charge's claims when they are committed by the same defendant and with the same discriminatory intent. See Fleming v. AC Square, Inc., No. 5:11-CV-01830 EJD, 2012 WL 1868915, at *10 (N.D. Cal. May 22, 2012) (citing Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1082 (9th Cir. 2000)).

The logic of those decisions applies here. Plaintiffs allege the new hire credits and pay caps are simply the latest elements of Wal-Mart's long-standing discriminatory pay policies. The basis for discrimination (gender) and perpetrator of the discrimination (Wal-Mart) is the same for all elements of those policies. Indeed, as discussed above, Plaintiffs have successfully alleged that the elements of those policies are so closely intertwined that they are incapable of separate analysis. An investigation of earlier practices could reasonably be expected to have uncovered later, still discriminatory, elements of Wal-Mart's pay policy.

### 1. American Pipe Tolling

Wal-Mart also argues that claims based on the 2005 and 2006 policies are time barred. It reasons that EEOC charges must be filed within 300 days of the "alleged unlawful employment practice" and that, with the exception of Mary Quintanilla, each of the Plaintiffs filed her charge in 2012, more than 300 days after the end of her employment with Wal-Mart. MTD at 20 (citing 42 U.S.C. § 2000e-5(e)(1)).

This argument applies only to policies implemented after June 2004 because, as Wal-Mart tacitly acknowledges, the filing of the initial Dukes v. Wal-Mart class action complaint tolled the statute of limitations for members of the would-be class in that case. This is because "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974). The Supreme Court extended this rule in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), which held that American Pipe tolling applied not only to putative class members attempting to intervene in the class action, but also those who later decide to bring individual suits. Id. at 350. The Court reasoned that the class complaint alerts the defendant "of the need to preserve evidence and witnesses respecting the claims of all the members of the class." Id. at 353. There is thus "no potential for unfair surprise, regardless of the method class members choose to enforce their rights." Id.

But, Wal-Mart argues, American Pipe tolling does not apply to claims based on the 2005 and 2006 policies, because those elements of its pay and promotional practices were not at issue in Dukes. The fourth and final amended complaint in Dukes addressed Wal-Mart's pay processes as they existed in June 2004. MTD at 20. Plaintiffs do not dispute this characterization of the operative Dukes complaint. Instead, they argue their claims are "substantive[ly] . . . identical to those in Dukes," and that they may rely on new evidence to support the same claims of "sex discrimination in pay and promotion." MTD Opp'n at 24–26.

Plaintiffs are correct that there is no requirement "that the individual suit must be identical in every respect to the class suit for the statute to be tolled." Tosti v. City of Los Angeles, 754 F.2d 1485, 1489 (9th Cir. 1985). But at the same time, "the tolling rule does not 'leave a plaintiff free to raise different or peripheral claims following denial of class status.'" Williams v. Boeing Co., 517 F.3d 1120, 1136 (9th Cir. 2008) (citing Crown, Cork & Seal, 462 U.S. at 354 (Powell, J., concurring) (internal alterations omitted)). The question is whether claims relying on the post-June 2004 policies are "different or peripheral" from the claims in Dukes, or simply not "identical."

The Court concludes these claims are similar enough to those in <u>Dukes</u> that <u>American Pipe</u> tolling is applicable. Courts are most likely to find that claims are "different or peripheral" from an earlier class action complaint when they rely on different causes of action or are asserted against different defendants. <u>See, e.g.</u>, <u>In re Cathode Ray Tube (CRT) Antitrust Litig.</u>, 27 F. Supp. 3d 1015, 1021 (N.D. Cal. 2014); <u>In re Cathode Ray Tube (CRT) Antitrust Litig.</u>, No. C 07-5944 SC, 2014 WL 1091095, at *4 (N.D. Cal. Mar. 13, 2014). Courts are more likely to find that <u>American Pipe</u> tolling applies when later claims assert the same legal theory as the class complaint, even if they are based on somewhat different factual allegations. <u>See, e.g.</u>, <u>Biotechnology Value Fund, L.P. v. Celera Corp.</u>, 12 F. Supp. 3d 1194, 1200 (N.D. Cal. 2013) (holding that <u>American Pipe</u> tolling applied, despite "some factual variation"). These cases' reasoning is persuasive here. Plaintiffs are bringing the same types of claims asserted in <u>Dukes</u>— disparate treatment and disparate impact gender discrimination. The fact that they assert additional factual allegations to support those claims does not make them "different or peripheral," or suggest that Wal-Mart has been unfairly surprised by claims challenging more recently introduced elements of its pay processes.

This outcome is consistent with the result in <u>Phipps v. Wal-Mart Stores, Inc.</u>, 792 F.3d 637 (6th Cir. 2015). In <u>Phipps</u>, the Sixth Circuit held that "a class of current Wal-Mart employees in Region 43 who allege that they have been subjected to a pattern or practice of gender discrimination resulting from regional company policies and practices that were not addressed in <u>Dukes</u>" could benefit from <u>American Pipe</u> tolling. Id. at 651 It is true that <u>Phipps</u> was abrogated by <u>China Agritech, Inc. v. Resh</u>, in which the Supreme Court held that <u>American Pipe</u> tolling does not apply when the second suit is also a class action. 138 S. Ct. 1800, 1806 (2018). But that holding does not undermine the Sixth Circuit's conclusion that the later claims against Wal-Mart were "within the scope of those asserted by the nationwide class in <u>Dukes</u>," even though they challenged "regional company policies and practices . . . not addressed in <u>Dukes</u>." <u>Phipps</u>, 792 F.3d at 651.

Nor is the Court persuaded by Wal-Mart's argument that "Plaintiffs, as <u>Dukes</u> class members, have implicitly conceded that <u>American Pipe</u> tolling cannot have tolled the time to file

24

charges regarding post-June 2004 policies." MTD at 21–22. Wal-Mart cites the <u>Dukes</u> Plaintiffs' briefing requesting an extension of the tolling period to file EEOC charges. <u>Id.</u> at 21. In that briefing, the <u>Dukes</u> Plaintiffs argued that "Walmart has long been on notice of the claims advanced by the class." <u>Id.</u> Wal-Mart argues that Plaintiffs are now contradicting their earlier representations by attempting to bring new claims not advanced in <u>Dukes</u>. But of course, Plaintiffs' position is that their individual claims are essentially identical to those in <u>Dukes</u>, or at least so similar that there is no danger of surprise. MTD Opp'n at 24–26. This position is consistent with the one taken by the <u>Dukes</u> Plaintiffs when they requested an extension of the tolling period.

### C. Motion to Stay Discovery

Wal-Mart requests a stay of discovery pending resolution of its partial motion to dismiss. Because this Order resolves the motion to dismiss, the motion to stay is denied as moot.

## I. CONCLUSION

For the foregoing reasons, the motion to sever is GRANTED, the motion to dismiss is GRANTED in part and DENIED in part, and the motion to stay is DENIED as moot. At argument, Plaintiffs' counsel indicated they may be able to amend the Complaint with additional factual allegations. Any amended complaint is due within twenty days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: October 25, 2019

CHARLES R. BREYER
United States District Judge